# SEALED

**United States District Court**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

AUG 28 2015

CLERK, U.S. DISTRICT COURT
By_____ Deputy

_____**NORTHERN**_____ **DISTRICT OF** _____**TEXAS**_____

**In the Matter of the Search of**
(Name, address or Brief description of person, property or premises to be searched)

13101 Preston Road, Suite 401
Dallas, Texas 75240

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

**CASE NUMBER:** 3:15-MJ-601-BF

I _Matthew Atkins_ being duly sworn depose and say:
I am a(n) **Special Agent with the Internal Revenue Service (IRS)** and have reason to believe that
on the person of or **XX** on the property or premises known as (name, description and/or location)

(SEE ATTACHMENT A).

in the _____**NORTHERN**_____ District of _____**TEXAS**_____ there is now concealed a certain
person or property, namely (describe the person or property to be seized)

(SEE ATTACHMENT B).

**which is** (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, and is,
otherwise, criminally possessed, **concerning a violation of Title** _26_ **United States code, Section(s)**
_7206(2) and 7203, and Title 18 USC § 286 and 287_ . **The facts to support a finding of Probable
Cause are as follows:**

(SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT MATTHEW ATKINS).
**Continued on the attached sheet and made a part hereof.   XX Yes _ No**

_Signature of Affiant_
Matthew Atkins
Special Agent, IRS

**Sworn to before me, and subscribed in my presence**

**August 28, 2015**
**Date and Time**

at   **Dallas, Texas**
**City and State**

**Paul D. Stickney**
**United States Magistrate Judge**
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

# Attachment A

**In the Matter of the Search of the business premises controlled by Sandra Cantu and/or doing business as "S & R Tax Services LLC"**

## Description of the Location to be Searched

The premises housing S & R Tax Services LLC at 13101 Preston Road, Suite 401, Dallas, Dallas Country, 75240 Texas, is described as a six story concrete and glass commercial office building located on the northwest corner of Preston Road and Interstate 635.  The building has the numbers "13101" on the southeast corner of the building.  The suite for S & R is located on the fourth floor.  The suite has a solid wood door with a mail slot and a sign to the right of the door with metallic lettering of the number "401" and "S & R Tax Service."



# Attachment B

**In the Matter of the Search of the business premises controlled by Sandra Cantu and/or doing business as "S & R Tax Services LLC"**

## Description of the Items to be seized

Based on the foregoing Affidavit, I believe that there is probable cause to believe that records constituting fruits, instrumentalities, or evidence of violations of title 26 U.S.C §§ 7206(2), Title 18 U.S.C § 286 and Title 18 U.S.C § 287 by SANDRA CANTU will be found at the location described in Attachment A. The following described items to be seized are those records related to the U.S. Individual Income Tax Returns, including attached schedules[1] prepared at S & R TAX SERVICES prepared by CANTU or any of her associates, covering the tax periods 2012, 2013, and 2014 in digital or print form. Other items to be seized should include records to determine and/or verify CANTU'S personal filing requirements for the tax years 2012, 2013 and 2014. These records will be comprised of papers, documents, and any other data or materials, either found physically, or stored electronically in the seized computers and all digital devices found on the premises listed below:

1. All computers, computer hard drives, and data information stored on computers, electronic files, disks and software which contain information requested located in the area of the business and under the control of CANTU or her associates. Computer items to be seized include the following:

---

[1] Schedule A, Schedule B, Schedule C, Schedule D, Form 8863, and others.

a. Computers and computer hardware consisting of all equipment which can collect, analyze, create, display, convert, store, conceal or transmit electronic, magnetic, optical, or similar computer impulses or data.  Hardware includes:

   i. data-processing devices such as central processing units, memory typewriters, personal digital assistant/electronic organizer, cellular telephones, and self-contained "laptop" or "notebook" computers;

   ii. internal and peripheral storage devices such as fixed disks, backup tapes, flash/thumb drives, smart cards, external hard disks, floppy disk drives and diskettes; peripheral input/output devices such as keyboards, printers, scanners, video display monitors and optical readers:

   iii. Related communications devices such as modems, cables, and connections; as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locks, and the contents thereof.

b. Computer software that includes digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form, including programs to run operating systems and applications such as:

   i. Word-processing programs

   ii. Graphics programs

   iii. Spreadsheet programs

   iv. Utilities

   v. Compilers

   vi. Interpreters

      vii.   Communications programs

     viii.   Tax preparation programs, forms and instructions

c.   Computer-related documentation of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

      i.   Computer passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices that consist of hardware, software, or other programming code. Data security hardware may include encryption devices, chips, and circuit boards.  Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

d.   In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

2.   The following documents reflecting the characteristics of the tax returns described in the aforementioned affidavit to include, client files, records of clients names and addresses, original and or complete copies of client federal income tax returns, for the tax years 2012, 2013 and

2014 (Forms 1040, 1040A, 1040EZ, 1040PC, 1040X, and electronically filed versions of same), together with all forms, schedules and attachments thereto. The seizure of these documents is necessary in order to identify which tax returns were prepared by CANTU or at her direction.

3. All records relating to tax return preparation, worksheets and/or supporting documentation used in the preparation of tax returns; records identifying the taxpayers for whom these returns have been prepared; invoices, receipts or other records relating to tax consulting or preparation fee charged, tax preparation software, tax forms and instructions, copies of tax returns prepared for customers, tax return preparation instructions, etc.

4. Records reflecting the amount of income tax refunds claimed or received on client tax returns. U.S. Treasury checks (tax refunds), Refund Anticipation Loan (RAL) applications, RAL checks, check stubs, check receipts, check inquiries, invoices, debit cards, etc. including the amounts of refunds which these clients claimed and/or received for the tax years 2011, 2012, 2013 and 2014.

5. Questionnaires, reflecting the characteristics of the tax returns in the aforementioned affidavit, prepared by or for clients prior to the preparation of any false or fraudulent returns for the tax years 2011, 2012, 2013 and 2014.

6. Forms of identification reflecting names, addresses, or telephone numbers of tax business associates or clients.

7. Correspondence relating to tax returns, to or from the IRS, or other taxing entities in digital or print form.

8.  Correspondence from taxpayers or other unknown individuals relating to tax return preparation, in digital or print form.

9.  Email or text records related to the scheme including tax return preparation information, and or communications discussing the scheme.

10. Bank and/or financial records related to the preparation fees associated with the tax return preparation including bank statements, cancelled checks, deposit tickets, wire transfer records, debit and credit card information, cashier's checks, debit cards or money order records.  This includes bank records in the name of S & R TAX SERVICES, or other entities used to hide income and CANTU's personal bank account records for the tax years within the scope of this warrant (2011-2014).

11. Cantu's personal financial records for the tax years 2011-2014, including any copies of tax returns in digital or print form, or any drafts of such records.

12. Internet service provider and IP address information associated with tax return preparation, cell phone service provider and billing and call detail records, and internet search history for all computers and electronic devices.

## AFFIDAVIT OF SPECIAL AGENT MATTHEW ATKINS
## IN SUPPORT OF SEARCH WARRANT APPLICATION

1.  I, Matthew Atkins, Special Agent (S/A), United States Department of Treasury, Internal

    Revenue Service Criminal Investigation (IRS-CI), being duly sworn, state:

2.  I make this affidavit in support of an application for a search warrant authorizing the search

    and seizure of items contained at the business office of S & R Tax Services LLC located at

    13101 Preston Road, Suite 401, Dallas, TX 75240 (described more fully in Attachment A,

    incorporated by reference herein) for evidence (described in particular in Attachment B,

    incorporated by reference herein).

### BACKGROUND AND EXPERIENCE OF AFFIANT

3.  I am a Special Agent employed by the Internal Revenue Service, Criminal Investigation, in

    Dallas, Texas. I have been so employed since June 2014. I earned a Bachelor of Science

    degree in Business Administration from the University of Arkansas in 1998. I earned a

    Masters of Business Administration (M.B.A.) from the University of Texas at Dallas in 2006

    and a Master of Science in Accounting and Information Management from the University of

    Texas at Dallas in 2006. I worked as a revenue agent for the IRS for over seven years prior

    to becoming a special agent. As a revenue agent, my job duties consisted of examining

    individuals and small businesses' to determine if tax returns were filed accurately and

    completely and in compliance with U.S. Tax laws. I graduated from the Criminal

    Investigator Training Program at the Federal Law Enforcement Training Center in Glynco,

    Georgia, in August of 2014. During this training program, I completed classes including the

    study of constitutional law, search and seizure, surveillance, and a variety of other law

    enforcement related classes. In December 2014, I graduated from the Special Agent

Investigative Techniques program at the National Criminal Investigation Training Academy in Glynco, GA. During this training I completed classes in the following subject matter areas: criminal tax, money laundering, search and seizure warrants, investigative techniques, methods of proof, and other financial crime related topics.

4. I am being assisted in this investigation by my on-the-job instructor, Special Agent Francisco Quiroz. In this affidavit for probable cause, I am relying, in part, on the expertise and experience of S/A Quiroz, who has been employed by Internal Revenue Service, Criminal Investigation as a Special Agent for nine years and other experienced Special Agents. S/A Quiroz has completed all phases of Criminal Investigator training at the Federal Law Enforcement Training Center, including training in search and seizure. During his career with the Internal Revenue Service, S/A Quiroz has participated in more than 15 financial search warrants.

5. From my training and experience, I know that:

- It is a violation of Title 26, United States Code, Section 7206(2), for any person to willfully aid, assist in, or advise the preparation of a tax return that is false or fraudulent with regard to any material matter.

- It is a violation of Title 26, United States Code, Section 7203, for any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, to willfully fail to pay such estimated tax, make such return, keep such records, or supply such information, at the time required by law or regulations.

- It is a violation of Title 18, United States Code, Section 286, for two or more persons to conspire to file false claims against the United States.

- It is a violation of Title 18, United States Code, Section 287, for an individual to willfully submit false claims against the United States.

## RELEVANT TAX CREDITS

6. From my knowledge, training, and experience, I know that the Internal Revenue Code provides for refundable tax credits for over-withheld tax deposits, the Earned Income Tax Credit (EIC), and the Additional Child Tax Credit (ACTC).

7. From my knowledge, training, and experience, I know that the Internal Revenue Code makes the EIC available to persons who meet certain income thresholds, filing status criteria, and have qualifying child(ren) that meet age requirements. This credit offsets a taxpayer's tax liability dollar-for-dollar and is fully refundable. Typically, a tax credit only reduces an individual's tax liability to zero. Refundable credits go beyond this and reduce the taxpayer's tax liability below zero and allow the taxpayer to receive a tax refund. If the taxpayer qualifies for a refundable credit and the amount of the credit is larger than the tax owed, the taxpayer will receive the difference as a tax refund.

8. From my knowledge, training, and experience, I know that the Internal Revenue Code provides for the ACTC to be available to taxpayers with qualifying child(ren) and earned income. The ACTC is a refundable credit also, as long as the taxpayer has earned income of at least $3,000.00.

9. From my knowledge, training, and experience, I know the Internal Revenue Code provides for refundable credits for taxpayers who make tax deposits in excess of their tax liability.

## PROBABLE CAUSE

## TAX RETURN INFORMATION ANALYSIS

### Informant

10. On February 20, 2015, SA Quiroz and I interviewed two informants (hereafter referred to as
    A1/2), 2014 clients of Sandra Cantu (hereafter referred to as Cantu). Cantu is a return
    preparer at S & R Tax Services LLC (S&R), located at 13101 Preston Road, Suite 401 in
    Dallas, Texas. A1/2 have been to S&R for multiple years and Cantu has prepared returns for
    the 2012, 2013, and 2014 tax years. In addition to Cantu, A1/2 also stated Cantu's sister,
    Isabel Cantu, works there at S&R. A1/2 informed us that Cantu had recently personally
    prepared a false 2014 Federal income tax return at S&R for him/her. This 2014 tax return
    was filed with the IRS on February 9, 2015. A1/A2 filled out a client intake form initially
    and signed a form agreeing to the $100.00 preparation fee. On his/her 2014 return prepared
    by Cantu, A1/2 provided his/her W-2 documents. From IRS systems, I was able to verify the
    forms they provided are correct. CANTU added fictitious Household Help (HSH) income to
    the W-2 income for both informants. HSH income is normally income received as a
    household employee for which the individual did not receive a Form W-2 due to earning less
    than the required threshold (the amount was less than $1,900.00 in 2014). A1/2 did not have
    any HSH income and did not provide the HSH income figure to Cantu. Also, Cantu and
    A1/2 originally agreed to a preparation fee of $100.00 upfront in cash. When A1 picked up
    her refund check from Cantu on February 19, 2015, another $699.00 in preparation fees was
    absent from A1's refund check. A1 was provided an itemized receipt which broke out any
    additional charges. The receipt listed a refund due of $1,254.88 less the following charges: a
    Tax preparation fee of $699.00, a transmitter fee of $52.95, a refund processing fee of

$20.00, and an audit protection fee of $88.95. A1 received a refund check for the residual amount of $393.98. Cantu did not list herself as the preparer on the return instead falsely listing the name "Carolina Sanchez" as the preparer. The receipt for the check was signed with the forged taxpayer's name and dated. A1 stated he/she did not sign the form as it was already signed when the check was picked up. At the time of speaking with the informants, A2 had not picked up his/her refund check yet.

### Scheme Development Center

11. Every year, taxpayers who are required to file a federal tax return have the option, either to mail a paper tax return to the IRS, or to file their return electronically (e-file). A taxpayer can prepare and file his/her own electronic tax return him/herself using available software or hire a return preparer to prepare and electronically file the tax return. In order to electronically file tax returns with the IRS, a return preparer must complete an application process to become an authorized electronic filer of income tax returns. The requesting party must complete and submit Form 8633, Application to Participate in the IRS E-file Program. Upon IRS approval of the application, the requestor becomes an Electronic Return Originator (ERO) and is assigned an Electronic Filing Identification Number (EFIN) which the IRS uses to identify and monitor ERO activity. In addition to EFINs, the IRS assigns Preparer Tax Identification Numbers (PTIN) to registered tax return preparers for identification purposes. Multiple PTINs can be used under the same EFIN. Once a return preparer obtains an EFIN, he/she can purchase return preparation and transmission software from an authorized provider. The software assists the return preparer in completing the transmission of federal tax returns. The return preparer must provide an EFIN in order to purchase the software.

The software company provides technical support to the return preparer and monitors returns that are filed through its software system.

12. In order to gather more information about the preparer and determine if the informants' claims were an isolated incident or part of a larger pattern, I consulted the Internal Revenue Service Scheme Development Center in Austin, Texas. The IRS Austin Scheme Development Center (SDC) is a specialized unit within the IRS who provides support to IRS-CI and whose main function is to detect false refund schemes intended to defraud the IRS. Some of the schemes detected by the IRS are orchestrated by fraudulent tax preparers. These fraudulent tax preparers accomplish their crimes by simple or sophisticated methods, alone, or through the participation of others, and by simple or sophisticated computer systems. The SDC monitors suspicious tax preparers for common badges of fraud such as substantially large deductions with round dollar figures, business losses on returns filed by full time wage earners, education credits, and itemized deductions such as unreimbursed employee expenses and charitable contributions.

13. The SDC conducted research on the information and determined that S&R appeared to be involved in filing returns that contain suspicious items related to tax refund schemes for the tax years 2012 through 2014. All returns filed by S&R Tax during the tax years 2011 through 2014 were filed under EFIN # 702762. This EFIN was used to transmit both of the informant returns discussed above. This EFIN has been used to electronically transmit to the IRS more than 1,652 tax returns resulting in tax refunds of $6,820,082.00 filed in the years 2012 through March of 2015. These tax returns were for the tax years 2011 through 2014.

14. The SDC provided IRS-CI with an application for EFIN 702762 in the name of Raul Sanchez, SSN # 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 with an address of 264 Picadilly Drive, Kyle, TX 78640. The

application lists "Sandia Cantu" as an alternate contact with a phone number of (469) 855-0908. It is not known whether the name Sandia is misspelled or is an attempt to conceal the name. However, the phone number was the same phone number listed on Cantu's business card provided to the informants and is the phone number listed on all tax returns filed by S&R. The number is also listed on the cover page of the tax return prepared for the Undercover Agent (see below).    When all of the returns prepared by S&R Tax Services LLC were submitted to the IRS, these returns list the names of the return preparers as Raul Sanchez, Carolina Sanchez, and Alma Real. Of the 1,652 returns filed from 2012 to March, 2015, Sandra Cantu is not listed as the preparer of any of them.

15. The data provided by the SDC shows a high percentage of the returns that include one or more of the following: Refundable EIC credits, HSH income, and schedule C returns with a loss.

16. HSH income, or household help income, is income received as a household employee for which the individual did not receive a Form W-2 due to earning less than the required threshold (the amount was less than $1,900.00 in 2014). Based upon my consultation with SA Quiroz and other experienced S/A's, I know that fraudulent preparers have added HSH income in order to increase total income on the return in order to qualify for the maximum amount of the refundable Earned Income Credit (EIC). The maximum amount of the EIC varies according to the income, filing status and number of dependents, and fraudulent preparers are aware of the level of each of these variables needed in order to generate the

*(Intentionally Left Blank)*

maximum amount of the refundable EIC credit.  Below is a summary of tax returns
electronically filed through EFIN 702762:

| Processing Year | Total Returns | Refund Returns | % of Refund Returns | Refunds Claimed | # of Schedule C Returns | # of returns with HSH income | # of EIC Returns |
|---|---|---|---|---|---|---|---|
| 2015 | 460 | 459 | 99.70% | 2,028,792 | 173 | 107 | 222 |
| 2014 | 422 | 414 | 98.10% | 1,739,665 | 153 | 155 | 193 |
| 2013 | 421 | 408 | 96.90% | 1,605,360 | 170 | 156 | 189 |
| 2012 | 349 | 349 | 100% | 1,446,265 | 87 | 65 | 148 |
| **Totals** | **1652** | **1630** | **98.60%** | **6,820,082** | **583** | **483** | **752** |

17. A Form Schedule C is used to report income earned by a self-employed individual.  By

including Schedule C losses on the returns, the Schedule C loss reduced the taxpayer's

taxable income and consequently their tax due.  Therefore, Cantu increased the refund

amounts over which her clients would have received had they only filed claiming their Form

W-2 wages income and not included the Schedule C loss.  Based on my training and

experience and on my review of the information supplied by the Austin SDC, I believe Cantu

is filing false claims for refunds and aiding in the preparation of false returns for clients.

## UNDERCOVER MEETING

18. On April 13, 2015, an IRS-CI undercover agent (UCA) met with Cantu at S&R Tax Services

located at 13101 Preston Road, Suite 401, Dallas, TX.  The UCA gave Cantu a Form W-2

with $34,488.00 in wages to prepare a 2014 Federal income tax return.  The UCA informed

Cantu he/she was single with no dependents and had no other sources of income.  A return

properly prepared for the UCA claiming a filing status of single with no dependents and the

wage and withholding amounts shown on the UCA's Form W-2, should have resulted in the

UCA owing the IRS $1,700.00 in tax due.

19. Cantu prepared a return with a false schedule C listing no income, and car and truck expenses of $15,089.00 and travel expenses of $1,692.00. The net result is a loss of $16,781.00 which decreases the UCA's w-2 income, and tax deficiency.

20. Cantu also added $11,180.00 of unreimbursed employee expenses to the UCA's schedule A. Unreimbursed employee expenses are legitimate expenses incurred for a taxpayer's job not reimbursed by their employer. Cantu falsely listed $10,250.00 in vehicle expenses and $930.00 in parking fees, tolls, and transportation. This allowed Cantu to itemize the deductions (more than standard deduction) and further decrease the taxable income on the UCA's tax return.

21. The result of these false items Cantu added to the 2014 Form 1040 for the UCA was a refund in the amount of $1,100.00. Cantu charged the UCA $711.00 to prepare the tax return. Cantu did not list herself as the preparer on the filed return, instead listing "Carolina Sanchez" as the preparer on the return. This follows the same pattern as the informant's claim and corroborates his/her statements. The UCA asked Cantu if she worked alone and Cantu stated there were two other girls who worked there but weren't there that day.

22. The UCA did not discuss any Schedule C business nor provide any expense amounts. The UCA did not tell Cantu that he/she had a business or any unreimbursed employee expenses. Cantu fabricated the figures and placed them on the UCA's tax return. Cantu did not discuss the additions of the false items to the return with the UCA, concealing her intentions to file a false return.

23. Based on my training and experience and the experience of Special Agent Quiroz, It appears Cantu willfully aided and assisted in the preparation of a false and fraudulent tax return in violation of Title 26 U.S.C. Section 7206(2).

## CANTU'S PERSONAL TAX RETURN INFORMATION

24. CANTU last filed a federal income tax return in 2012. The 2012 return filed lists minimal income with an unknown refundable credit resulting in a refund. CANTU has not filed a return for 2013 or 2014. For 2014, Cantu did not file a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income tax return. As of March of 2014, S&R prepared at least 460 returns. Cantu appears to be at the minimum a co-owner of S&R Tax Services LLC. Cantu charged the informant A1 a preparation fee of $799.00 for their 2014 return, and charged the UCA $711.00 to prepare his/her 2014 tax return. Cantu did not list her name on either return and is not listed as the preparer on any of the 460 returns prepared to date for the 2015 filing season. If Cantu charged conservatively an average of $700.00 per return prepared, she would have generated $321,300.00 in fees in preparing the 459 returns in 2014. In 2014, an individual is required to file a U.S. Individual Income Tax Return if they earned more than $10,150.00. In light of these facts, your affiant hereby requests the Court's permission to seize any evidence that verifies Cantu's income earned and/or verifies Cantu's filing requirement for a U.S. Individual Income Tax Return for the years 2012 through 2015.

## STATUTES VIOLATED AND PREMISES TO BE SEARCHED

25. I make this affidavit in support of an application for a search warrant authorizing the search and seizure of items contained at the business office of S&R located at the following premises, as described more fully in Attachment A, incorporated by reference herein.

       **S & R Tax Services LLC**
       **13101 Preston Road, Suite 401**
       **Dallas, TX  75240**

26. I have been intimately involved in the investigation of Cantu and Cantu's tax preparation business, S&R. Based on the information outlined in this affidavit, as well as my training and experience, it is my belief that Cantu has violated the Internal Revenue laws by preparing and filing fraudulent income tax returns from 2012 to 2015. Unless otherwise stated, the information in this affidavit is either personally known by me or has been provided to me by other law enforcement officers, government agencies, and/or from a review of various documentation and records as more particularly described herein. As set forth herein, there is probable cause to believe that at S & R TAX SERVICES located at 13101 Preston Road, Suite 401, Dallas, TX, there exists instrumentalities and evidence of violations of Title 26 U.S.C. Section 7206(2), aiding or assisting in the filing of false or fraudulent returns, Title 26 U.S.C. Section 7203, willful failure to file return, Title 18 U.S.C. Section 286, conspiracy to submit false claims, and Title 18 Section 287, false claims against the United States.

## EXISTENCE OF RECORDS

27. Based on my training and experience and the experience of my on-the-job instructor, S/A Quiroz, I know that return preparers keep records for several years of client names and addresses, copies of tax returns that they prepared for their clients, along with forms, schedules, and attachments. In addition, Title 26, USC Section 6107 requires that an income tax return preparer retain a complete copy of the returns or a list of the names and taxpayer identification numbers of the taxpayers for whom returns were prepared for a minimum of three years. I also know from my experience and from S/A Quiroz's experience that some of this information may be stored by means of computer information systems.

28. During the April 13, 2015, undercover meeting between Cantu and an IRS-CI UCA, Cantu utilized a computer located in an office at S & R Tax Services to prepare a fraudulent 2014

Federal income tax return, Form 1040, for the IRS-CI UCA. During this meeting, the IRS-CI

UCA filled out and submitted a client intake form to CANTU for her records. The IRS-CI

UCA also observed multiple computers and filing cabinets inside S&R and witnessed Cantu

making copies of the UCA's documents and the prepared tax return for her records. During

the meeting with the UCA, Cantu mentioned she had been at that location for approximately

five years.

29. On August 24, 2015, I went by the location of S&R Tax Services LLC at 13101 Preston

Road, Suite 401 in Dallas, Texas, 75240. The office had a sign outside the door with "S & R

Tax Service" and the suite number of "401."

## ROLE OF COMPUTERS

30. Based on my training and experience as an IRS-CI special agent as well as information

obtained through discussions with other Special Agents, I know:

a.  Individuals routinely maintain business and personal records of financial activity

such as bank statements, bank records, receipts for the purchases and sale of

assets, including personal assets and business equipment, receipts for cash

expenditures, general ledgers, journals, copies of financial instruments including

cash deposit slips, cashier's checks, wire transfers, money orders, and other

financial documents at the individual's residence or place of business. Important

records are often kept in safe deposit boxes. Records kept are in the form of

paper and electronic format and are routinely kept for a long period of time.

b.  Individuals involved in business activities routinely utilize computer-based

bookkeeping or financial reporting software in order to track both personal and

business income and expenses. Reports generated from date inputs into such

software applications display detailed information relative to sources and timing of income earned and expenses incurred and paid.

c.    Individuals involved in business services often use computers to perform research, maintain client files, maintain records of income and expenses and communicate through the use of the internet.

d.    Income, expense and financial reports generated from such software are printed or copied to digital media storage devices and provided to the tax preparer and referenced during the preparation of individual and business income tax returns, informational tax returns, and employment tax returns.

e.    Individuals and businesses attempting to conceal the existence and/or sources of taxable income do so by engaging in financial transactions with domestic institutions through all manner of financial instruments including cash, cashier's checks, wire transfers, money order and traveler's checks, etc. Financial instruments purchased and cashed may not be reflected on the reports provided to the tax preparers for the preparation of the tax returns. Records and storage of financial instruments are routinely maintained for several years at the individual's residence, in safe deposit boxes, or at a place of business in both paper and electronic formats.

f.    Individuals who are involved in income producing activities commonly retain records for long periods of time, particularly when they participate in the said activity for a long period of time.  These records, due to ease of storage, are routinely saved in files on personal computer and other similar storage devices.

## COMPUTER DEFINITIONS

31. I have consulted with IRS-CI Special Agent Araceli Lagos regarding the aspects of properly
retrieving and analyzing electronically stored computer data.  Special Agent Lagos has been
employed with IRS-CI for more than thirteen years.  In addition to attending training in
financial investigation techniques and accounting, she has also attended the IRS-CI Seized
Computer Evidence Recovery School at the Federal Law Enforcement Training Center in
Glynco, Georgia, where she learned about the operation of computer systems and the correct
procedures for seizure and analysis of computer systems.  Special Agent Lagos has
participated in many search warrants during which she has seized or imaged numerous
computers, electronic memory devices, cell phones, and smart phones and has been
responsible for analyzing seized electronic data and records from those systems.

32. Based upon your affiant's consultation with Special Agent Lagos, I know that computer data
can be stored on a variety of systems and storage devices including hard disk drives, floppy
disks, compact disks, magnetic tapes and memory chips, flash drives, thumb drives, personal
digital assistants, smart phones, and cellular telephones.  I also know that during the search of
the premises it is not always possible to search computer equipment and storage devices for
data for a number of reasons, including the following:

    a.  Searching computer systems is a highly technical process, which requires specific
expertise and specialized equipment.  There are so many types of computer
hardware and software in use today that it is impossible to bring to the search site
all of the necessary technical manuals and specialized equipment necessary to
conduct a thorough search.  In addition, it may also be necessary to consult with

computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

b. Searching computer systems requires the use of precise, scientific procedures, which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

c. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. A single megabyte of storage space is the equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-spaced pages of text. Storage devices capable of storing 160 gigabytes (GB) of data are now commonplace in desktop computers. Consequently, each non-networked, desktop computer found during a search can easily contain the equivalent of 80 million pages of data, which, if printed out, would result in a stack of paper over four miles high. Further, a 160 GB drive could contain as many as approximately 150 full run movies or 150,000 songs.

d.   Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions.  For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text.  Computer users can also attempt to conceal data by using encryption, which means that a password or device, such as a "dongle" or "keycard," is necessary to decrypt the data into readable form.   In addition, computer users can conceal data within another seemingly unrelated and innocuous file in a process called "steganography." For example, by using steganography a computer user can conceal text in an image file, which cannot be viewed when the image file is opened.  Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband or instrumentalities of a crime.

e.   In light of these concerns, your affiant hereby requests the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct off-site imaging of the hardware, if, upon arriving at the scene, the agents executing the search conclude that it would be impractical to image the computer hardware on-site.

f.   The terms "records", "documents", and "materials" as used above include all of the items of evidence more fully described in Attachment "B" in whatever form and by whatever means such records, documents, or materials, their drafts, or

their modifications may have been created or stored, including, but not limited to any handmade form (such as writing, drawing, painting, with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies); any electrical or magnetic form (such as tape recording, cassettes, compact disks); and/or any information on an electronic or magnetic storage device (such as floppy diskettes, hard drives, backup media, disk cartridges, CD-ROMs, optical disks, smart cards, flash or thumb drives, smart phones, personal digital assistants, cellular telephones, or electronic notebooks); as well as printouts or readouts from any magnetic storage device.

33. Based upon your affiant's consultation with Special Agent Lagos, I know that cell phones, smart phones, and PDA's can contain the following types of information on internal memory of the device or an attached SIM card and/or SD memory card or chip: phone numbers, addresses, personal identifying information, call logs for inbound and outbound calls, missed call logs, dialed call logs, recent call logs, communication files, voice mail, emails and email account information, digital images, buddy lists, SMS/MMS text messages, passwords, GPS information, SD memory cards and chips, and SIM cards.

34. During this investigation, I have encountered the use of the cell phone number for Sandra Cantu (phone number 469-855-0908) numerous times to include: listed on filed tax returns for S&R Tax Services LLC, listed on Cantu's business card, UCA called Cantu and left voice mail, Cantu returned call from the number to UCA, UCA called Cantu back and scheduled appointment, and UCA called Cantu to let her know he was downstairs at the appointment

time.  Your affiant hereby requests the Court's permission to seize, process, and analyze all cell phones, smart phones, PDA's and related attached SIM cards, memory cards and chips.

## CONCLUSIONS

35. Based upon the information above, my experience and training, and discussions with other experienced special agents, I have probable cause to believe that Sandra Cantu, along with associates, have engaged and continue to engage in violations of Title 26 U.S.C. Section 7206(2),  aiding or assisting in the filing of false or fraudulent returns, Title 26 U.S.C. Section 7203, Willful failure to File return, Title 18 U.S.C. Section 286, conspiracy to file false claims, and Title 18 U.S.C. Section 287, filing false claims.

36. Based on the foregoing, I also have reason to believe Sandra Cantu maintains records constituting evidence and instrumentalities of the aforementioned Federal statutes, which are more fully described in Attachment B, "Items to be Seized", (which is incorporated herein) that are located at 13101 Preston Road, Suite 401, Dallas, TX  75240.  Accordingly, I respectfully request that a warrant be issued authorizing the search of the premises described in Attachment A for the items described in Attachment B.

Special Agent Matthew Atkins
IRS- Criminal Investigation

Sworn to and subscribed before me on this 26 day of August, 2015

PAUL D. STICKNEY
United States Magistrate Judge